UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LAPP INSULATORS LLC,

                Plaintiff,

v.

ROBERT GEMIGNANI,

                Defendants.

**COMPLAINT AND DEMAND FOR JURY**

**Civil Action No.:**

Plaintiff, Lapp Insulators LLC, ("Lapp"), by its attorneys, Bond, Schoeneck & King, PLLC, as and for its Complaint against Defendant Robert Gemignani ("Gemignani"), alleges as follows:

## INTRODUCTION

1. This action arises out of the unlawful access, copying, and use of Lapp's confidential and proprietary information, by Gemignani, who is a former Lapp employee. Specifically, this action seeks to recover damages suffered by Lapp as a result of Gemignani's: (a) violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030; (b) breach of an Employee Proprietary Information and Invention Agreement; (c) misappropriation of trade secrets; (d) breach of fiduciary duty; and (e) conversion of property. The action also seeks injunctive relief directing Gemignani to deliver to Lapp all of its confidential, proprietary and trade secret information in his possession, custody or control and enjoining Gemignani from engaging in similar conduct in the future.

## JURISDICTION AND VENUE

2. This action arises under the Computer Fraud and Abuse Act, 18 U.S.C. §1030, as well as the common law.

1593521.4

3. This Court has subject matter jurisdiction pursuant to 18 U.S.C. §1030 and 28 U.S.C. §1331, and over Lapp's common law claims pursuant to 28 U.S.C. §1367(a). Venue lies in this District under 28 U.S.C. §1391(b)(2), as this action centers on transactions and events that took place primarily within the Western District of New York.

## THE PARTIES

4. Lapp is a Delaware limited liability company with its principal place of business in LeRoy, New York.

5. Upon information and belief, Gemignani is an individual residing in Lewis Center, Ohio. The Court has personal jurisdiction over Gemignani based upon New York Civil Practice Law and Rules §302.

## FACTUAL BACKGROUND

6. Lapp is a manufacturer of high voltage ceramic and composite insulators for the global electric utility industry. In connection with its business, Lapp develops and relies on confidential and proprietary information, improvements, and inventions, the confidentiality of which is critical to Lapp's ability to compete in the industry.

7. Gemignani was employed by Lapp as a Sales Manager from December, 2005 through April 3, 2009. As part of his responsibilities as Sales Manager, Gemignani had access to certain of Lapp's proprietary material, including, but not limited to, drawings, blue prints, manuals, letters, notebooks, reports, customer lists, cost and manufacturing data, financial reports and data, sales and marketing data, proprietary technology and related documents, and other information stored both in hard copies and on Lapp's computers and computer system.

8. Lapp takes reasonable precautions to protect the confidentiality of its proprietary information, including limiting the number of persons with access to such information and requiring its employees to sign non-disclosure agreements.

9. In connection with his employment, because he would have access to confidential and proprietary information of Lapp, Gemignani signed an Employee Proprietary Information and Invention Agreement (the "Confidentiality Agreement," attached hereto as Exhibit 1) on or about December 13, 2005. Paragraph 2 of that the Confidentiality Agreement provided that Gemignani would not:

> directly or indirectly disclose, use, patent or publish either during or subsequent to [his] term of employment, any secret or confidential information of Lapp designated to [him] as such, whether acquired or developed by [him] or obtained from other Lapp employees, unless [he] shall first secure the written and authorized consent of Lapp.

10. Paragraph 3 of the Confidentiality Agreement provided that Gemignani agreed:

> upon termination of [his] employment with Lapp, to deliver to Lapp all of its proprietary material including, but not limited to, drawings, blue prints, manuals, letters, notebooks, reports, customer list, cost and manufacturing data and all other material or copies thereof of a secret or confidential nature relating to Lapp's business and which are in [his] possession or under [his] control.

11. On or about March 25, 2009, Lapp informed Gemignani that it was terminating his employment, effective April 3, 2009.

12. In connection with his termination, Gemignani signed a Separation and Release Agreement (the "Separation Agreement"), which provided that Gemignani would receive as severance pay a continuation of his wages through May 29, 2009, less applicable withholding.

1593521.4

13. On information and belief, Gemignani accepted a job with one of Lapp's competitors either before or shortly after his termination from Lapp.

14. As an employee of Lapp, Gemignani was issued a laptop computer for business use during his employment. Gemignani returned his Lapp-issued laptop computer on April 22, 2009.

15. Upon receipt of Gemignani's Lapp-issued laptop computer, Lapp conducted a forensic analysis of that computer. The forensic analysis revealed that Gemignani had accessed confidential and proprietary information stored on the laptop computer on multiple occasions from April 3, 2009 through April 22, 2009.

16. The forensic analysis also revealed that, after Gemignani had been advised of his termination, he connected external memory devices to the laptop computer on at least two occasions. On information and belief, Gemignani copied more than 30 different Lapp files onto one or more external memory devices, which are still in his possession. The files that Gemignani accessed and copied contained highly confidential and proprietary information of Lapp.

17. Additionally, Lapp discovered that after Gemignani's termination from Lapp, Gemignani accessed Lapp's Lotus Notes e-mail server and its LappNet server – both of which are physically located in Leroy, New York – on several occasions, including as late as May 5, 2009.

18. Lapp's e-mail and LappNet servers are password protected and authorized access is limited to Lapp personnel for the purpose of conducting Lapp related business.

19. Gemignani's actions have forced Lapp to undertake a costly investigation and response process that continues to this day.

20. On information and belief, despite Lapp's demand that Gemignani preserve the Lapp information in his possession, custody or control, Gemignani has, or attempted to, destroy that information.

## COUNT I
### (Violation of the Computer Fraud and Abuse Act)

21. Lapp repeats and realleges its allegations in paragraphs 1 through 20 as if fully set forth herein.

22. As an employee of Lapp, Gemignani had authorization to access Lapp's confidential and proprietary business information, including information stored in Lapp's computer network and on the laptop computer that Lapp issued to Gemignani for use in conducting Lapp's business.

23. Lapp's computer network and the laptop used by Gemignani are used in interstate commerce and communication.

24. Lapp's computer network and the laptop used by Gemignani are protected computers under the Computer Fraud and Abuse Act, 18 U.S.C. §1030.

25. Gemignani lost any authorization to access Lapp's confidential and proprietary business information, including information stored in Lapp's computer network and on the laptop computer that Lapp issued to Gemignani for use in conducting Lapp's business, when he failed to return the laptop computer immediately upon Lapp's request and, in any event, on the date of his termination from Lapp. Moreover, Lapp's authorization to access Lapp's confidential and proprietary business information was limited to use in conducting Lapp's business.

26. Despite the fact that he lacked authority to do so, Gemignani nevertheless intentionally accessed and downloaded and/or copied Lapp's confidential and proprietary

1593521.4

information from the laptop computer issued to Gemignani and from Lapp's computer network. Gemignani engaged in this conduct for purposes other than conducting Lapp's business and as a result of such conduct has caused Lapp damage and loss in violation of 18 U.S.C. §1030. Gemignani's conduct has caused Lapp damage and loss in an amount to be determined at trial, but not less than $5,000.

27. In addition, Gemignani's conduct has caused and will continue to cause Lapp irreparable injury unless restrained by this Court.

28. Lapp has no adequate remedy at law.

29. Gemignani's above-described conduct constitutes a violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030.

30. By reason of the foregoing, Lapp is entitled to damages and an injunction under 18 U.S.C. §1030(g).

## COUNT II
### (Breach of Contract)

31. Lapp repeats and realleges its allegations in paragraphs 1 through 30 as if fully set forth herein.

32. The Confidentiality Agreement is an enforceable agreement that imposes upon Gemignani certain contractual obligations.

33. Gemignani, by reason of the Confidentiality Agreement, was contractually prohibited from: (a) directly or indirectly disclosing, using, patenting or publishing any secret or confidential information of Lapp without Lapp's written and authorized consent; and (b) retaining or refusing to return to Lapp any of its proprietary material including, but not limited to, drawings, blue prints, manuals, letters, notebooks, reports, customer list, cost and

1593521.4

manufacturing data and all other material or copies thereof of a secret or confidential nature relating to Lapp's business.

34. By reason of the foregoing, Gemignani has breached the Confidentiality Agreement by, among other things, accessing confidential and proprietary information stored on Lapp's laptop computer, downloading and saving Lapp's confidentiality and proprietary information to external memory devices, and accessing Lapp's Lotus Notes e-mail server and its LappNet server after his termination.

35. Gemignani has also breached the Confidentiality Agreement by failing to return to Lapp all of the confidential and proprietary information that he accessed, downloaded, and saved without Lapp's authorization.

36. Lapp has fully performed all of its obligations under the Confidentiality Agreement, if any, except to the extent such performance has been excused, prevented, hindered, frustrated and/or rendered useless by the act and omissions of Gemignani.

37. The goodwill and business of Lapp has been damaged by Gemignani's breach of the Confidentiality Agreement.

38. Lapp has no adequate remedy at law.

39. As a result, Lapp has suffered monetary damages, in an amount to be proven later at trial. Lapp is further entitled to injunctive relief to preclude Gemignani's further breach of the Confidentiality Agreement.

## COUNT III
### (Misappropriation of Trade Secrets)

40. Lapp repeats and realleges its allegations in paragraphs 1 through 39 as if fully set forth herein.

1593521.4

41. Lapp's confidential and proprietary information constitute Lapp's trade secrets.

42. Lapp's confidential and proprietary information give Lapp a significant advantage over existing and would-be competitors, which advantage would be lost if Lapp's trade secrets became known to the public or to Lapp's competitors.

43. Lapp has made reasonable efforts to preserve the confidentiality of its trade secrets, by, among other measures, requiring employees to sign and adhere to confidentiality agreements and restricting access to such information. Lapp's trade secrets derive independent economic value from not being generally known to the public or to other persons who could obtain economic value from their disclosure.

44. Gemignani had knowledge of and access to Lapp's trade secrets.

45. Gemignani was under a duty to keep Lapp's trade secrets confidential, and not to use, exploit, or divulge such information other than for Lapp's benefit.

46. Gemignani misappropriated Lapp's trade secrets for his own gain, without regard for Lapp's rights, and without permission or license.

47. Gemignani's conduct was, is, and remains willful, wanton, malicious, and taken with blatant disregard for Lapp's rights.

48. Gemignani has damaged the business and goodwill of Lapp by the misappropriation and use of Lapp's confidential and proprietary information.

49. Lapp has no adequate remedy at law.

50. By virtue of Gemignani's wrongdoing, Lapp has suffered monetary damages, in an amount to be proven later at trial. Lapp is further entitled to injunctive relief to preclude Gemignani's further exploitation and misappropriation of Lapp's trade secrets.

1593521.4

## COUNT IV
**(Breach of Fiduciary Duty)**

51. Lapp repeats and realleges its allegations in paragraphs 1 through 50 as if fully set forth herein.

52. As an employee of Lapp, Gemignani owed Lapp fiduciary duties, including but not limited to the duty to act with the utmost good faith and loyalty toward Lapp, the duty of trust and confidence, and the duty to refrain from disclosing or exploiting Lapp's confidential and proprietary business information and trade secrets for his own or a competitor's benefit, or to Lapp's detriment.

53. By reason of the foregoing, Gemignani breached all of the above-described fiduciary duties by, among other things, misappropriating Lapp's trade secrets and confidential and proprietary business information.

54. As a result of his breach of fiduciary duties, Gemignani was not entitled to compensation and severance benefits he received from Lapp during the period of his fiduciary breach. Lapp is entitled to recover that compensation and other benefits from Gemignani.

55. Gemignani's conduct was willful, wanton, malicious, and taken with blatant disregard for Lapp's rights.

56. As a result of Gemignani's conduct, Lapp has suffered monetary damages, in an amount to be determined at trial.

## COUNT VI
**(Conversion)**

57. Lapp repeats and realleges its allegations in paragraphs 1 through 56 as if fully set forth herein.

1593521.4

58. The Lapp confidential and proprietary information downloaded and/or copied by Gemignani rightfully belongs to Lapp.

59. Gemignani, after his termination, had no right to possess the confidential and proprietary information of Lapp.

60. By reason of the foregoing, Gemignani has converted the confidential and proprietary information of Lapp.

61. Lapp has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Lapp respectfully requests judgment in its favor and against Gemignani awarding Lapp the following relief:

(a) Awarding to Lapp compensatory damages to be determined at trial, but believed to be no less than $5,000;

(b) Requiring Gemignani to disgorge the severance pay he received pursuant to the Separation Agreement;

(c) Awarding to Lapp punitive damages in an amount to be determined at trial;

(d) Awarding to Lapp its costs incurred herein, including reasonable attorneys' fees;

(e) Awarding to Lapp injunctive relief ordering Gemignani to deliver to Lapp all of Lapp's confidential, proprietary and trade secret information in his possession, custody or control;

1593521.4

(f) Awarding to Lapp injunctive relief precluding Gemignani from further accessing and making use of Lapp's confidential and proprietary information and trade secrets for any purpose; and

(g) Awarding to Lapp such other and further relief as the Court deems appropriate.

## JURY DEMAND

Lapp demands a jury on all issues triable thereby.

Dated: August 3, 2009                    BOND, SCHOENECK & KING, PLLC

By: _____
James C. Holahan
Gregory J. McDonald
Joseph S. Nacca
Attorneys for Plaintiff
345 Woodcliff Drive, Suite 208
Fairport, New York 14450-4210
Telephone: (585) 362-4700
Facsimile: (585) 362-4701

1593521.4

# EXHIBIT 1



## Lapp Insulators LLC
### Employee Proprietary Information and Invention Agreement

In consideration of my employment by Lapp Insulators LLC (hereinafter "Lapp"):

1. I will devote my best efforts to duties designated by Lapp and agree to the immediate disclosure of any improvements, developments, original designs of any type, or inventions, made by me during the term of my employment relating to the existing or contemplated scope of Lapp's business, and said improvements or inventions shall be the sole and exclusive property of Lapp. I, my heirs, and legal representatives further agree to execute and deliver to Lapp, at the expense of Lapp, all applications, assignments or other instruments, or inventions made while in the employ of Lapp, which Lapp shall deem necessary for applying for, obtaining and maintaining patents in the United States and/or foreign countries.

2. I shall not directly or indirectly disclose, use, patent or publish either during or subsequent to my term of employment, any secret or confidential information of Lapp designated to me as such, whether acquired or developed by me or obtained from other Lapp employees, unless I shall first secure the written and authorized consent of Lapp.

3. I agree, upon termination of my employment with Lapp, to deliver to Lapp all of its proprietary material including, but not limited to, drawings, blue prints, manuals, letters, notebooks, reports, customer list, cost and manufacturing data and all other material or copies thereof of a secret or confidential nature relating to Lapp's business and which are in my possession or under my control.

4. As a matter of record, I have (have not) incurred certain obligations to others or conceived or made unpatented inventions prior to the date of my employment. The list on the reverse side of this agreement is a complete list and description of all such obligations or unpatented inventions, and I desire that these shall be excluded from this agreement. I shall not disclose or induce Lapp to use any proprietary or confidential information or material belonging to other individuals or companies.

5. This agreement shall be construed under and governed by the laws of the State of New York.

| 12/13/05 | ROBERT GERIGNANI |
|---|---|
| Date | Print employee name |
| *[signature: Anna M. Fay]* | *[signature]* |
| Witness | Employee signature |

12/05
Salaried

130 Gilbert Street
Le Roy, NY 14482