**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**LAPP INSULATORS LLC,**

                              **Plaintiff,**                    **09-CV-0694A(Sr)**

**v.**

**ROBERT GEMIGNANI,**

                              **Defendant.**

_____

<u>**REPORT, RECOMMENDATION AND ORDER**</u>

              This case was referred to the undersigned by the Hon. Richard J. Arcara,

pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon

dispositive motions.  Dkt. #18.


              Currently before the Court is defendant's motion to dismiss the complaint

(Dkt. #14) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the

following reasons, it is recommended that defendant's motion to dismiss be denied.


<u>**FACTUAL BACKGROUND**</u>

<u>**Defendant Gemignani's Employment with Lapp Insulators LLC**</u>

              Plaintiff, Lapp Insulators LLC ("plaintiff" or "Lapp") is a manufacturer of

high voltage ceramic and composite insulators for the global electric utility industry.

Dkt. #1, ¶ 6.  From December 2005 through April 3, 2009, defendant, Robert

Gemignani ("defendant" or "Gemignani"), was employed by Lapp as a Sales Manager.

*Id*. at ¶ 7.  As part of defendant's responsibilities as a Sales Manager, he had access to certain of Lapp's proprietary material, including, but not limited to, "drawings, blue prints, manuals, letters, notebooks, reports, customer lists, cost and manufacturing data, financial reports and data, sales and marketing data, proprietary technology and related documents, and other information stored both in hard copies and on Lapp's computers and computer system."  *Id*.  Lapp alleges that it "takes reasonable precautions to protect the confidentiality of its proprietary information, including limiting the number of persons with access to such information and requiring its employees to sign non-disclosure agreements."  *Id*. at ¶ 8.  On or about December 13, 2005, because he would have access to confidential and proprietary information of Lapp, Gemignani signed an Employee Proprietary Information and Invention Agreement (hereinafter "Confidentiality Agreement").  *Id*. at ¶ 9. Specifically, paragraph 2 of the Confidentiality Agreement provided that Gemignani would not,

> directly or indirectly disclose, use, patent or publish either during or subsequent to [his] term of employment, any secret or confidential information of Lapp designated to [him] as such, whether acquired or developed by [him] or obtained from other Lapp employees, unless [he] shall first secure the written and authorized consent of Lapp.

In addition, paragraph 3 of the Confidentiality Agreement provided that Gemignani agreed,

> upon termination of [his] employment with Lapp, to deliver to Lapp all of its proprietary material including, but not limited to drawings, blue prints, manuals, letters, notebooks, reports, customer list [sic], cost and manufacturing data and all other material or copies thereof of a secret or confidential nature relating to Lapp's business and which are in [his] possession or under [his] control.

**Termination of Gemignani's Employment with Lapp**

On or about March 25, 2009, Lapp informed Gemignani that it was terminating his employment effective April 3, 2009.  *Id*. at ¶ 11.  In connection with his termination, Gemignani signed a Separation and Release Agreement which provided that Gemignani would receive severance pay (a continuation of his wages) through May 29, 2009, less any applicable withholding.  *Id*. at ¶ 12.

In its complaint against Gemignani, Lapp alleges, upon information and belief, that Gemignani had accepted a job with one of Lapp's competitors either before or shortly after his termination.  *Id*. at ¶ 13.  On April 22, 2009, Gemignani returned the laptop computer Lapp had issued to him for business use during the period of his employment.  *Id*. at ¶ 14.  Following the return of Gemignani's laptop computer, Lapp conducted a forensic analysis of the computer.  *Id*. at ¶ 15.

The forensic analysis revealed that Gemignani had accessed confidential and proprietary information stored on the laptop computer on multiple occasions during the period April 3, 2009 through April 22, 2009.  *Id*.  In addition, the forensic analysis revealed that after Gemignani had been advised of the termination of his employment with Lapp, he connected external memory devices to the laptop computer on at least two occasions.  *Id*. at ¶ 16.  Specifically, Lapp alleges that the forensic analysis further revealed that after Gemignani had been advised of the termination of his employment with Lapp, he copied more than 30 different Lapp files onto one or more external

memory devices.  *Id*.  The files Gemignani accessed and copied contained Lapp's

highly confidential and proprietary information.  *Id*.  Moreover, Lapp discovered that

after Gemignani's termination that Gemignani accessed Lapp's Lotus Notes email

server and its LappNet server on several occasions, including as late as May 5, 2009.

*Id*. at ¶ 17.


**The Complaint**

On or about August 4, 2009, Lapp commenced the instant action against

Gemingnani alleging five[1] causes of action.  The basis for this Court's jurisdiction is

plaintiff's claim of a violation of the Computer Fraud and Abuse Act, Title 18, United

States Code, Section 1030.  In addition, plaintiff also alleges various state law claims,

including, breach of contract, misappropriation of trade secrets, breach of fiduciary duty,

and conversion.


**Violation of the Computer Fraud and Abuse Act**

Plaintiff's cause of action alleging a violation of the Computer Fraud and

Abuse Act states:

> 22.   As an employee of Lapp, Gemignani had
>        authorization to access Lapp's confidential and
>        proprietary business information, including
>        information stored in Lapp's computer network and on
>        the laptop computer that Lapp issued to Gemignani
>        for use in conducting Lapp's business.

---

[1] The Court notes that although plaintiff's final cause of action against defendant
is labeled Count VI, the complaint omits a Count V.  Accordingly, there are only five
causes of action against defendant, not six.

23. Lapp's computer network and the laptop used by Gemignani are used in interstate commerce and communication.

24. Lapp's computer network and the laptop used by Gemignani are protected computers under the Computer Fraud and Abuse Act, 18 U.S.C. §1030.

25. Gemignani lost any authorization to access Lapp's confidential and proprietary business information, including information stored in Lapp's computer network and on the laptop computer that Lapp issued to Gemignani for use in conducting Lapp's business when he failed to return the laptop computer immediately upon Lapp's request and, in any event, on the date of his termination from Lapp. Moreover, Lapp's authorization to access Lapp's confidential and proprietary business information was limited to use in conducting Lapp's business.

26. Despite the fact that he lacked authority to do so, Gemignani nevertheless intentionally accessed and downloaded and/or copied Lapp's confidential and proprietary information from the laptop computer issued to Gemignani and from Lapp's computer network. Gemignani engaged in this conduct for purposes other than conducting Lapp's business and as a result of such conduct has caused Lapp damage and loss in violation of 18 U.S.C. §1030. Gemignani's conduct has caused Lapp damage and loss in an amount to be determined at trial, but not less than $5,000.

27. In addition, Gemignani's conduct has caused and will continue to cause Lapp irreparable injury unless restrained by this Court.

28. Lapp has no adequate remedy at law.

29. Gemignani's above-described conduct constitutes a violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030.

> 30.     By reason of the foregoing, Lapp is entitled to
>          damages and an injunction under 18 U.S.C.
>          §1030(g).

Dkt. #1, ¶¶ 22-30.

By the instant motion, defendant seeks the dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(6), of plaintiff's Computer Fraud and Abuse Act cause of action.  In addition, assuming this Court agrees and recommends dismissal of the cause of action, defendant further requests that this Court exercise its discretion and decline jurisdiction over plaintiff's state law claims.  In the alternative, defendant argues that each of plaintiff's "state law claims" must also fail for the following reasons,

> [s]pecifically, Plaintiff cannot succeed on Count II [breach of contract] of the Complaint as Plaintiff fails to establish that Defendant breached the express terms of the Employee Proprietary Information and Invention Agreement.  Plaintiff fails to adequately allege that Defendant misappropriated trade secrets in Count III of the Complaint, as Plaintiff fails to alleges that Defendant utilized any trade secrets to harm Plaintiff. Plaintiff fails to state a claim for breach of fiduciary duty in Count IV because Plaintiff fails to allege that Defendant utilized any confidential and proprietary information to Plaintiff's detriment.  Finally, Plaintiff fails to state a claim for conversion in Count VI because intangible property cannot be the basis for a conversion claim, and Plaintiff fails to alleges that it does not have control or access to confidential information.

Dkt. #16, p.6.

**Breach of Contract**

In its breach of contact cause of action, Lapp alleges that by reason of his accessing confidential and proprietary information stored on Lapp's laptop computer,

downloading and saving Lapp's confidential and proprietary information to external

memory devices and accessing Lapp's Lotus Notes e-mail server and its LappNet

server after his March 25, 2009 termination, Gemignani breached the terms of the

Confidentiality Agreement.  *Id*. at ¶¶ 33-34.  In addition, Lapp alleges that Gemignani

breached the Confidentiality Agreement by failing to return to Lapp all of the confidential

and proprietary information that he accessed, downloaded and saved without Lapp's

authorization.  *Id*. at ¶ 35.  Lapp is seeking injunctive relief, as well as monetary

damages.  *Id*. at ¶ 39.


### Misappropriation of Trade Secrets

In its misappropriation of trade secrets cause of action, Lapp alleges that

its confidential and proprietary information constitutes Lapp's trade secrets.  *Id*. at ¶ 41.

Lapp further alleges that Gemignani had knowledge of and access to Lapp's trade

secrets.  *Id*. at ¶ 44.  Gemignani was under a duty to keep Lapp's trade secrets

confidential and "not to use, exploit, or divulge such information other than for Lapp's

benefit."  *Id*. at ¶ 45.  Lapp alleges that Gemignani misappropriated Lapp's trade

secrets for his own gain, without regard for Lapp's rights and without permission or

license.  *Id*. at ¶ 46.  Lapp further alleges that Gemignani's conduct "was, is, and

remains willful, wanton, malicious, and taken with blatant disregard for Lapp's rights."

*Id*. at ¶ 47.  In addition to seeking monetary damages for the alleged damage to its

business and goodwill, Lapp is also seeking injunctive relief to preclude Gemignani's

"further exploitation and misappropriation of Lapp's trade secrets."  *Id*. at ¶ 50.

**Breach of Fiduciary Duty**

In its breach of fiduciary duty cause of action, Lapp alleges,

[a]s an employee of Lapp, Gemignani owed Lapp fiduciary duties, including but not limited to the duty to act with the utmost good faith and loyalty toward Lapp, the duty of trust and confidence, and the duty to refrain from disclosing or exploiting Lapp's confidential and proprietary business information and trade secrets for his own or a competitor's benefit, or to Lapp's detriment.

Dkt. #1, ¶ 52.  Specifically, Lapp alleges that Gemignani breached all of the above-listed fiduciary duties to Lapp, by among other things, misappropriating Lapp's trade secrets and confidential and proprietary business information.  *Id*. at ¶ 53.  As a result of the breach of the fiduciary duties he owed to Lapp, Lapp further alleges that Gemignani was not entitled to receive the compensation and severance benefits he received from Lapp during the period of his breach.  Accordingly, Lapp alleges that it is entitled to recover that compensation, as well as other benefits paid to Gemignani.  *Id*. at ¶ 54.

**Conversion**

In its fifth cause of action against Gemignani, Lapp alleges that the Lapp confidential and proprietary information downloaded and/or copied by Gemignani "rightfully belongs to Lapp."  *Id*. at ¶ 58.  After his termination, Lapp alleges that Gemignani had no right to possess the confidential and proprietary information of Lapp.  *Id*. at ¶ 59.  Finally, Lapp alleges, "[b]y reason of the foregoing, Gemignani has converted the confidential and proprietary information of Lapp."  *Id*. at ¶ 60.

## DISCUSSION AND ANALYSIS

### Dismissal Standard

The United States Supreme Court recently revisited the standard of review on a motion to dismiss and concluded that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 167 L.Ed.2d 929, 940 (2007) (internal citations omitted).  In setting forth this standard, the Supreme Court disavowed an often quoted statement from its decision in *Conley v. Gibson* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id.* at 943, *quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The Supreme Court explained that

> This "no set of facts" language can be read in isolation as saying that any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings; and the Court of Appeals [for the Second Circuit] appears to have read *Conley* in some such way when formulating its understanding of the proper pleading standard ...

*Id.* at 943.  The Supreme Court decried that

> On such a focused and literal reading of *Conley's* "no set of facts," a wholly conclusory statement of claim would survive

a motion to dismiss whenever the pleadings left open the
possibility that a plaintiff might later establish some "set of
[undisclosed] facts" to support recovery.  So here, the Court
of Appeals specifically found the prospect of unearthing
direct evidence of conspiracy sufficient to preclude
dismissal, even though the complaint does not set forth a
single fact in a context that suggests an agreement.  It
seems fair to say that this approach to pleading would
dispense with any showing of a "'reasonably founded hope'"
that a plaintiff would be able to make a case ...

*Id.* at 944 (internal citations omitted).  The Supreme Court then limited *Conley* to

describing "the breadth of opportunity to prove what an adequate complaint claims, not

the minimum standard of adequate pleading to govern a complaint's survival."  *Id.* at

945.  The Supreme Court reiterated that it did "not require heightened fact pleading of

specifics, but only enough facts to state a claim to relief that is plausible on it face."  *Id.*

at 949.

The Court of Appeals for the Second Circuit recognized that *Bell Atlantic

Corp. v. Twombly* has created "[c]onsiderable uncertainty concerning the standard for

assessing the adequacy of pleadings."  *Iqbal v. Hasty*, 490 F.3d 143, 155

(2d Cir. 2007).  "After careful consideration" of that decision, the Court of Appeals has

concluded that "the Court is not requiring a universal standard of heightened fact

pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a

pleader to amplify a claim with some factual allegations in those contexts where such

amplification is needed to render the claim plausible."  *Id.* at 157-58.

**Evidentiary Standard**

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its

consideration "to facts stated on the face of the complaint or incorporated in the

complaint by reference, and to matters of which judicial notice may be taken." *Leonard*

*F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *see also*

*Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).  "Where a plaintiff has

relied on the terms and effect of a document in drafting the complaint and that

document is thus integral to the complaint," the district court may consider the contents

of the document "even if it is not formally incorporated by reference." *Broder v.*

*Cablevision Systems Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (internal quotations

omitted), *quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  "If

the documents referenced in the complaint contradict the facts alleged by the plaintiff,

the documents control and the court need not accept as true the plaintiff's allegations."

*Olin Corp. v. E.I. Dupont De Nemours and Corp.*, No. 05-CV-100S(Sc), 2006 WL

839415 (W.D.N.Y. March 27, 2006).

A  district court may take judicial notice of documents filed in other courts

to establish the fact of such litigation and related filings.  *Kramer*, 937 F.2d at 774.  A

district court may also "take judicial notice of admissions in pleadings and other

documents in the public record filed by a party in other judicial proceedings that

contradict the party's factual assertions in a subsequent action."  *Harris v. New York*

*State Dep't of Health*, 202 F. Supp.2d 143, 173 n.13 (S.D.N.Y. 2002), *citing Kramer*,

937 F.2d at 774.  In the matter of *Pandozy v. Robert J. Gumenick, P.C.*, for example, the district court granted a motion to dismiss a cause of action for attorney malpractice on statute of limitations grounds where plaintiff's second amended complaint alleged continuous representation, but prior complaints in that action and other actions, as well as documents authored by plaintiff, stated that plaintiff had terminated the attorney. No. 07 Civ. 1242, 2008 WL 2190151, at *3 (S.D.N.Y. May 23, 2008).


**Computer Fraud and Abuse Act Claim**

As noted above, defendant claims that plaintiff has failed to sufficiently plead any loss or damage compensable under the Computer Fraud and Abuse Act ("CFAA") and therefore, plaintiff's complaint fails to state a claim upon which relief may be granted.  Dkt. #16.  In addition, defendant argues that even if plaintiff could establish loss or damage under the CFAA, plaintiff fails to adequately allege that defendant exceeded his authorization to access information and that such failure is fatal to plaintiff's complaint.  *Id*.  In its reply memorandum, defendant further argues that plaintiff does not allege a loss of at least $5,000 and further that any loss incurred was as a result of "responding to an offense."  Dkt. #22, p.5.


Although the CFAA is principally a criminal statute, it does provide for a private right of action.  "The CFAA, in relevant part, provides a private federal cause of action against a person who 'intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtain ... information from any protected

computer.'" *Penrose Computer Marketgroup, Inc. v. Camin*, 682 F.Supp.2d 202, 207

(N.D.N.Y. 2010), *citing Jet One Group, Inc. v. Halcyon Jet Holdings, Inc.*, No. 08-CV-

3980 (JS)(ETB), 2009 WL 2524864, at *5 (E.D.N.Y. Aug. 14, 2009) (citing 18 U.S.C. §

1030(a)(2)).  Subsection (g) of the CFAA provides for the civil remedy at issue here

stating,

> Any person who suffers damage or loss by reason of a
> violation of this section may maintain a civil action against
> the violator to obtain compensatory damages and injunctive
> relief or other equitable relief.  A civil action for a violation of
> this section may be brought only if the conduct involves 1 of
> the factors set forth in subclauses (I), (II), (III), (IV), or (V) of
> subsection (c)(4)(A)(i).

Title 18, United States Code, Section 1030(g).  In the instant case, only subsection

(c)(4)(A)(i)(I) applies insofar as it states, "loss to 1 or more persons during any 1-year

period (and, for purposes of an investigation, prosecution, or other proceeding brought

by the United States only, loss resulting from a relating course of conduct affecting 1 or

more other protected computers) aggregating at least $5,000 in value."[2]


     Defendant argues that plaintiff cannot allege that it suffered a damage or

loss compensable under the CFAA.  Dkt. #16, p.8.  Notwithstanding the foregoing,

defendant concedes that plaintiff alleges that "Gemignani's conduct has caused Lapp

damage and loss in an amount to be determined at trial, but not less than $5,000."  Dkt.

---

     [2] Subsections (II), (III), (IV) and (V) are inapplicable here insofar as they involve
medical treatment, physical injury to any person, a threat to public health or safety, and
computers used for or by the U.S. government.

#1, ¶ 26.  Defendant reads the CFAA's definition of loss to mean that "loss" must be related to an interruption in service.  The CFAA defines loss as follows:

> the term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

Title 18, United States Code, Section 1030(e)(11).  Based on his interpretation of the term loss, defendant argues that "plaintiff does not allege that defendant's actions caused any interruption in service or that it has incurred any costs restoring the data, program, system, or information to the condition prior to the offense.  Accordingly, [p]laintiff cannot allege a loss that is compensable under the CFAA."  Dkt. #16, p.8.  Interpreting the CFAA's definition of the term damage, defendant argues that plaintiff "does not allege that [d]efendant's actions caused any impairment to the integrity or availability of data, a program, a system, or information."  *Id*.  Indeed, defendant concludes that "[a]ll [p]laintiff alleges is that [d]efendant 'accessed confidential and proprietary information stored on the laptop,' that [d]efendant 'connected an external memory device to the laptop on at least two occasions,' and that [d]efendant 'accessed Lapp's Lotus Notes e-mail server and its LappNet server.'  Those allegations fail to state a claim for loss or damage under the CFAA.  Accordingly, [p]laintiff's claim for violation of the CFAA must fail."  *Id*. at pp.8-9.

Contrary to defendant's conclusions, plaintiff's complaint alleges that as a result of Gemignani's actions, Lapp conducted a forensic analysis of Gemignani's

computer and also undertook a costly investigation and response process.  Dkt. #20,

p.8.  Moreover, Lapp alleges that the costs associated with the forensic analysis and

investigation amounted to not less than $5,000.  *Id*.  The CFAA's definition of "loss"

"has been interpreted to mean 'any remedial costs of investigating the computer for

damage, remedying the damage and any costs incurred because the computer cannot

function while or until repairs are made." *Penrose Computer Marketgroup, Inc. v.*

*Camin*, 682 F.Supp.2d 202, 208 (N.D.N.Y. 2010), *citing Nexans Wires S.A. v. Sark-*

*USA, Inc.,* 319 F.Supp.2d 468 (S.D.N.Y.2004), *aff'd,* 166 Fed. Appx. 559 (2d Cir. 2006).

Moreover, defendant's interpretation that the CFAA requires that the loss must be

related to an interruption in service is belied by the plain language of the definition of

loss.  As plaintiff asserts, the definition of loss is written in the conjunctive and

therefore, by its express terms, "loss" includes both (1) the cost of responding to an

offense, conducting a damage assessment, and restoring the status quo prior to the

offense **and** (2) any revenue lost, cost incurred, or other consequential damages

incurred because of an interruption in service.  Dkt. #20, p.8.  In *I.M.S. Inquiry*

*Management Systems, Ltd. v. Berkshire Information Systems, Inc.*, the court found that

the plaintiff had adequately plead loss under the CFAA where, as here, plaintiff alleged

that as a result of defendant's unauthorized activity, plaintiff was forced to incur costs of

more than $5,000 in damage assessment and remedial measures.  307 F.Supp.2d 521,

526 (S.D.N.Y. 2004).

Here, plaintiff's complaint alleges that following his termination from Lapp, Gemignani "lost any authorization to access Lapp's confidential and proprietary business information."  Dkt. #1, ¶ 25.  Notwithstanding the foregoing, following his termination, between April 3, 2009 and April 22, 2009, Gemignani, despite the fact that he lacked authority to do so, intentionally accessed and downloaded or copied Lapp's confidential and proprietary information using the laptop computer issued to him for conducting Lapp's business.  *Id*. at ¶ 26.  Indeed, Lapp alleges that Gemignani engaged in this conduct for purposes other than conducting Lapp's business and as a result of such conduct, Lapp conducted a forensic analysis of that computer and the forensic analysis revealed that Gemignani had accessed confidential and proprietary information stored on the laptop computer on multiple occasions from April 3, 2009 through April 22, 2009.  Dkt. #1, ¶¶ 15 and 26.  As a result of Gemignani's conduct, Lapp alleges that it has suffered damage and loss in violation of Title 18, United States Code, Section 1030, in an amount to be determined at trial, but not less than $5,000. *Id*. at ¶ 27. Thus, notwithstanding defendant's arguments to the contrary, Lapp has alleged loss and unauthorized access sufficient to withstand the instant motion to dismiss.

The Court acknowledges, however, that there is a split within the Second Circuit as to whether an employee who permissibly accesses his employer's data for an improper purpose violates the CFAA.  *Compare Jet One Group, Inc. v. Halcyon Jet Holdings, Inc.*, No. 08-CV-3980 (JS)(ETB), 2009 WL 2524864, at *5 (E.D.N.Y. Aug. 14, 2009) (dismissing CFAA causes of action because it was alleged that defendant had

access to confidential and proprietary information and misuse or misappropriation of information that was lawfully accessed does not violate the CFAA) and *Caylon v. Mizuho Securities USA, Inc.*, No. 07 Civ. 2241 (RO), 2007 WL 2618658, at *1 (S.D.N.Y. Sept. 5, 2007) (denying motion to dismiss finding that an employee who permissibly accesses his employer's data for an improper purpose such as misappropriation, violates the CFAA).  At this early stage in the proceedings, this Court need not opine as to whether an employee who permissibly accesses his employer's data for an improper purpose violates the CFAA because, as noted above, plaintiff's complaint unquestionably alleges that Gemignani lacked authorization to access Lapp's confidential and proprietary information after the date of his termination.  Accordingly, for the foregoing reasons, this Court recommends that defendant's motion to dismiss the CFAA cause of action be denied.

**Plaintiff's Remaining Causes of Action**

Consistent with his argument that plaintiff's CFAA cause of action should be dismissed for failure to state a cause of action, defendant further asserts that once plaintiff's federal claim is dismissed, this Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims.  Dkt. #16, p.16.  Because this Court has recommended that defendant's motion to dismiss plaintiff's CFAA cause of action be denied, the Court will address defendant's motion to dismiss each of plaintiff's "state law claims" below.

**Breach of Contract Claim**

"To make out a viable claim for breach of contract a 'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Eternity Global Master Fund Ltd, v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004), *quoting Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).  In the instant case, assuming that all the allegations in the complaint are true as this Court must on a motion to dismiss, plaintiff has properly alleged all of the elements of a cause of action for breach of contract.  In support of his motion to dismiss, defendant argues that the complaint fails to allege that defendant actually disclosed any of plaintiff's confidential information to a third party.  Indeed, defendant asserts that plaintiff's complaint only alleges that the defendant failed to return property and/or confidential information but nevertheless neglects to specify what information defendant failed to return and how this action caused it harm.  Dkt. #16, pp.16-17.

In further support of his motion to dismiss, defendant maintains that he did not breach the terms of the contract because not only did he return his laptop computer, but the complaint fails to allege that he withheld or failed to return any confidential or proprietary information <u>upon</u> his termination.  *Id*. at p.17.  Rather, defendant argues that plaintiff alleges that <u>after</u> his termination, defendant "connected external memory devices to the laptop on at least two occasions . . . copied more than 30 different Lapp files onto one or more external memory devices . . . " conduct which the defendant

-18-

claims does not fall within the conduct prohibited by the contract. In its opposition to the instant motion, plaintiff states that the complaint alleges that defendant accessed certain information after his termination, as well as that defendant accessed and copied plaintiff's confidential and proprietary information after he had been advised of his termination but before the termination was effective.  Dkt. #20, p.16.  Moreover, plaintiff argues that the Confidentiality Agreement between the parties contains post-termination obligations and that defendant's use, disclosure and/or possession of Lapp's confidential and proprietary information constitutes a breach of the agreement. *Id*. at p.17.  Finally, plaintiff disagrees with defendant's assertion that the complaint fails to allege damages and references the allegations in the complaint concerning the undertaking of the investigation, as well as the loss of goodwill and business.  In addition, plaintiff argues that its complaint should not be dismissed because without discovery it has not been able to determine the entire scope of its damages.  Indeed, plaintiff asserts that discovery is needed for it to determine what additional damages it has sustained as a result of defendant's actions.

          In the instant case, plaintiff has clearly alleged each of the elements sufficient to state a cause of action sounding in breach of contract.  At this stage of the proceedings, the Federal Rules of Civil Procedure only require a short concise statement of the claim and a plaintiff is not required to allege specific facts sufficient to establish that it will succeed on the merits.  The question of whether facts will be revealed during discovery and whether the plaintiff will be able to prove all of the elements, including damages, is a matter to be determined at a later date.  Accordingly,

it is recommended that defendant's motion to dismiss plaintiff's breach of contract
cause of action be denied.

### Misappropriation of Trade Secrets Claim

"To succeed on a claim for the misappropriation of trade secrets under New York
law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the
defendants used that trade secret in breach of an agreement, confidential relationship
or duty, or as a result of discovery by improper means." *N. Atl. Instruments, Inc. v.
Haber*, 188 F.3d 38, 43-44 (2d Cir.1999).  New York courts define a "trade secret" as
"any formula, pattern, device or compilation of information which is used in one's
business, and which gives [the owner] an opportunity to obtain an advantage over
competitors who do not know or use it." *N. Atl. Instruments*, 188 F.3d at 44 (internal
quotation marks omitted).  A trade secret, however, "is not simply information as to
single or ephemeral events in the conduct of the business; rather, it is a process or
device for continuous use in the operation of the business." *Sit-Up Ltd. v.
IAC/InterActiveCorp.*, No. 05-CV-9292, 2008 WL 463884, at *8 (S.D.N.Y. Feb. 20,
2008) (quoting *Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.*, 118 F.3d
955, 968 (2d Cir.1997)). "The most important consideration remains whether the
information was secret."  *Payment Alliance Int'l, Inc. v. Ferreira*, 530 F.Supp.2d 477,
481 (S.D.N.Y. 2007) (quoting *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 298 (2d
Cir.1986)) (internal quotation marks omitted). Whether the information was secret is

"generally a question of fact."  *Ashland Mgmt. v. Janien*, 82 N.Y.2d 395, 407 (1993)

(internal citations omitted).

> Courts use the following factors to determine whether
> information constitutes a trade secret:  (1) the extent to
> which the information is known outside of the business; (2)
> the extent to which it is known by employees and others
> involved in the business; (3) the extent of measures taken by
> the business to guard the secrecy of the information; (4) the
> value of the information to the business and its competitors;
> (5) the amount of effort or money expended by the business
> in developing the information; (6) the ease or difficulty with
> which the information could be properly acquired or
> duplicated by others.

*N. Atl. Instruments*, 188 F.3d at 44 (quoting *Ashland Mgmt. v. Janien*, 82 N.Y.2d 395,

407 (1993)). These factors, however, are difficult to apply in the absence of discovery,

making their consideration sometimes futile in the context of a motion to dismiss. *See,*

*e.g., SD Protection, Inc. v. Del Rio*, 498 F.Supp.2d 576, 585-86 (E.D.N.Y.2007) ("To

consider these factors now [on a motion to dismiss] would be premature.... Without

discovery, I cannot possibly weigh the six factors discussed in Ashland ....").


In his motion to dismiss, Gemignani argues that plaintiff has failed to

specify what confidential and/or proprietary information defendant accessed and how

the defendant has used this information for his own advantage or to plaintiff's

disadvantage.  Dkt. #16, pp.19-20.  As an alternative to outright dismissal, defendant

requests this Court to require plaintiff to submit "a more definite statement."  *Id*.   This

Court finds that plaintiff's allegation that it possessed a trade secret is sufficient and

does not require a "more definite statement," as additional facts will be revealed during

discovery.  In opposition to that portion of defendant's motion concerning the absence

of allegations that defendant used plaintiff's information for his own advantage, plaintiff

cites to paragraph 46 of the complaint and argues that from that allegation it can be

inferred that Gemignani is using the misappropriated information to his own advantage.

Indeed, paragraph 46 states, "Gemignani misappropriated Lapp's trade secrets for his

own gain, without regard for Lapp's rights and without permission or license."  Dkt. #1,

¶ 46.  Defendant's assertion that absent an allegation that the defendant ever disclosed

plaintiff's confidential or proprietary information to any third party, plaintiff can't succeed

on its claim is not the proper standard on a motion to dismiss.  All of the allegations in

plaintiff's complaint read together allege that defendant is using the misappropriated

information for his own gain or advantage.  Moreover, discovery has not yet begun and

additional facts relative to plaintiff's trade secrets and defendant's conduct will be

revealed during discovery.  Therefore it is recommended that defendant's motion to

dismiss plaintiff's misappropriation of trade secrets cause of action be denied.


### Breach of Fiduciary Duty Claim

Under New York law, "[i]n order to establish a breach of fiduciary duty, a

plaintiff must prove the existence of a fiduciary relationship, misconduct by the

defendant, and damages that were directly caused by the defendant's misconduct."

*Kurtzman v. Bergstol*, 40 A.D.3d 588, 590, 835 N.Y.S.2d 644, 646 (2d Dep't 2007); *see*

*also Cramer v. Devon Group, Inc.*, 774 F.Supp. 176, 184 (S.D.N.Y.1991) (two primary

elements of breach of fiduciary duty claim are (1) the existence of a fiduciary

relationship between the parties and (2) a breach of the duty flowing from that relationship). Both the existence of a fiduciary relationship and the breach of obligations arising from such relationship tend to be "fact-specific inquir[ies] reserved for a jury." *Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688, 2002 WL 362794, *9 (S.D.N.Y. Mar. 6, 2002); *Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 672 N.Y.S.2d 8, 14 (1st Dep't 1998) (existence of a fiduciary relationship "is necessarily fact-specific to the particular case").

        In the instant case, plaintiff alleges that as an employee, Gemignani owed plaintiff a fiduciary duty, "including but not limited to the duty to act with the utmost good faith and loyalty toward Lapp, the duty of trust and confidence, and the duty to refrain from disclosing or exploiting Lapp's confidential and proprietary business information and trade secrets for his own or a competitor's benefit, or to Lapp's detriment."  Dkt. #1, ¶ 52.  Lapp further alleges that Gemignani breached this fiduciary duty by, among other things, "misappropriating Lapp's trade secrets and confidential and proprietary information."  *Id*. at ¶ 53.  As a result of the breach of his fiduciary duties, Lapp asserts that Gemignani was not entitled to the compensation and severance benefits he received from Lapp during the period of his breach.  *Id*. at ¶ 54.  In support of his motion to dismiss, Gemignani argues that plaintiff has failed to allege that he used Lapp's confidential and proprietary information for his own benefit or to plaintiff's detriment.  Dkt. #16, p.22.  In addition, defendant maintains that the proper measure of damages for defendant's alleged breach of his fiduciary duty is either defendant's gain or plaintiff's loss, not the recovery of the compensation and other benefits Lapp paid to

Gemignani.  *Id*. at p.23.  With respect to his argument concerning the proper measure

of damages, defendant maintains that what plaintiff is attempting to do is rescind the

Separation Agreement and Release between the parties and further, that any analysis

of that agreement must be pursuant to Georgia law.  *Id*.  In its opposition to the instant

motion, plaintiff argues that it is not seeking the rescission of the Separation Agreement

and Release, rather, Lapp is seeking "disgorgement of the compensation paid to

Gemignani during the period of his disloyalty."  Dkt. #20, p.24.  At this stage of the

proceedings, this Court need not opine as to the proper measure of damages.  This

Court must simply determine whether plaintiff's complaint states a cause of action for

breach of fiduciary duty, which it clearly does.  Accordingly, for the foregoing reasons,

this Court recommends that defendant's motion to dismiss plaintiff's cause of action for

breach of fiduciary duty be denied.


### Conversion Claim

Plaintiff's final cause of action states as follows:

58.  The Lapp confidential and proprietary information
downloaded and/or copied by Gemignani rightfully belongs
to Lapp.

59.  Gemignani, after his termination, had no right to
possess the confidential and proprietary information of Lapp.

60.  By reason of the foregoing, Gemignani has converted
the confidential and proprietary information of Lapp.

61.  Lapp has been damaged in an amount to be
determined at trial.

Dkt. #1, ¶¶ 58-61.  In 2007, the New York Court of Appeals considered the following

question certified to it by the United States Court of Appeals for the Second Circuit, "is a

claim for the conversion of electronic data cognizable under New York law?"  In

answering the certified question in the affirmative, the New York Court of Appeals in

*Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283 (2007) stated, "we believe that the tort

of conversion must keep pace with the contemporary realities of widespread computer

use.  We therefore answer the certified question in the affirmative and hold that the type

of data that Nationwide allegedly took possession of – electronic records that were

stored on a computer and were indistinguishable from printed documents – is subject to

a claim of conversion in New York."  8 N.Y.3d at 292-93.  Although the *Thyroff* decision

addresses plaintiff's customer information and other personal information stored on the

computer at issue and does not consider "the myriad of other forms of virtual

information," the reasoning employed by New York's highest court is nevertheless

instructive.  Indeed, the New York Court of Appeals reasoned:

> 'It is the strength of the common law to respond, albeit
> cautiously and intelligently, to the demands of
> commonsense justice in an evolving society.'  That time has
> arrived.  The reasons for creating the merger doctrine and
> departing from the strict common-law limitation of conversion
> inform our analysis.  The expansion of conversion to
> encompass a different class of property, such as shares of
> stock, was motivated by 'society's growing dependence on
> intangibles.'  It cannot be seriously disputed that society's
> reliance on computers and electronic data is substantial, if
> not essential.  Computers and digital information are
> ubiquitous and pervade all aspects of business, financial
> and personal communication activities.  Indeed, this opinion
> was drafted in electronic form, stored in a computer's
> memory and disseminated to the Judges of this Court via e-
> mail.  We cannot conceive of any reason in law or logic why
> this process of virtual creation should be treated any

> differently from production by pen on paper or quill on
> parchment.  A document stored on a computer hard drive
> has the same value as a paper document kept in a file
> cabinet.

*Id*. at 291-92 (internal citations omitted).


"To establish a cause of action to recover damages for conversion, 'the

plaintiff must show legal ownership or an immediate superior right of possession to a

specific identifiable thing and must show that the defendant exercised an unauthorized

dominion over the thing in question – to the exclusion of the plaintiff's right.'" *Clark

Street Wine and Spirits v. Emporos Systems Corporation*, No. 10-CV-1392, 2010 WL

4878190, at *7 (E.D.N.Y. Nov. 24, 2010).  In *Clark Street Wine and Spirits*, plaintiff sued

Emporos Systems Corporation alleging, *inter alia*, violations of the Computer Fraud and

Abuse Act and conversion alleging that a current or former employee of Emporos,

which installed credit card processing services for plaintiff, misappropriated customers'

information.  In denying defendant's motion to dismiss the complaint, including plaintiff's

conversion claim, the United States District Court for the Eastern District of New York

(Weinstein J.) stated, "plaintiffs' possession of their customers' credit card information

was adversely affected and its value attenuated by Emporos' alleged misconduct.  It

seriously diluted its value and became a disincentive rather than a reason for customers

and the business to use the system."  *Id*.


Following Judge Weinstein's reasoning, in the instant case, the over 30

Lapp files containing highly confidential and proprietary information that Lapp alleges

were accessed and copied by Gemignani after he was advised of his termination and

Gemignani's continued possession of such confidential and proprietary information has

allegedly damaged the business and goodwill of Lapp.  Once again, defendant argues

that plaintiff is not entitled to the relief sought.  However, as discussed above, whether

plaintiff is entitled to relief is for a jury to decide and is not a matter presently before this

Court.  Read together, all of the allegations in plaintiff's complaint state a cause of

action for conversion.  Accordingly, it is recommended that defendant's motion to

dismiss plaintiff's conversion claim be denied.


## CONCLUSION

Based on the foregoing, it is recommended that defendant's motion (Dkt.

#14) to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure be denied.


Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:


This Report, Recommendation and Order be filed with the Clerk of the

Court.


ANY OBJECTIONS to this Report, Recommendation and Order must be

filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this

Report, Recommendation and Order in accordance with the above statute,

Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).  <u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order</u>.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

DATED:    Buffalo, New York
             March 9, 2011


*<u>s/ H. Kenneth Schroeder, Jr.</u>*
H. KENNETH SCHROEDER, JR.
United States Magistrate Judge